There has been a survey with a jury in the country, and a special verdict found here upon which the case is : in September, 1726, Colonel Tayloe, a sworn surveyor, surveyed, (or pretended to survey) for the lessor of the plaintiff, one thousand acres of land, of winch he returned a plat, and a patentwas granted, June 16, 1727. This land, except about sixty poles from the beginning, was not marked or measured before issuing of the patent, and this Chew, the lessor of the plaintiff, knew. The defendant af-terwards surveys one thousand acres, and obtained a patent in September, 1728, which takes in part of the land within the bounds of Chew’s patent. This was marked and measured, and the surveyor (the said Tayloe) told the defendant the land was free and not taken up before. It appearing by the jury’s report in the country, that die surveyor told Chew, when be began his survey and run the sixty poles, that he could not then finish it, being then Saturday night,-but would, when he came up to finish two other surveys he had begun the day before. It appears also, that in January, 1728, when tire defendant first began to seat his land, Chew forewarned him from digging upon the land in controversy. The survey is of no other use than to shew how the grants interfere, and the sole question in the case is, whether the grant to Chew, the lessor, be good or not. The objection is, that the surveyor’s returning a plat without marking and measuring die land, and that with Chew’s privity, is a false suggestion, and so the King was deceived, and his grant void. This point has been once already labored very strongly, and once your honors have determined that the grant is good ; but Sir John Randolph is now to convince you of your mistake. However, I hope this case will not be drawn into a precedent, that after judgment is passed, a cause shall be suffered to he argued again, because a lawyer or his client happen *31 not to be satisfied. It must be my task to endeavor to shew that this grant is good ; and although [ shall not produce so many cases as I presume you will be entertained with on the other side, I hope to prove, first, That there is no such deceit in this case as will make void the King’s grant; secondly, That to determine this grant void, will introduce a general mischief and inconvenience upon the subjects here. As to the first, the King is of that great eminence and consideration in the law, that many little defects and omissions will make his grant void, which, in the case of a common person have no effect. Such are mis-recitals, wrong suggestions, non-recitals, &c. But the reason is not, as I conceive, because the King’s honor was concerned, as was argued last court, but because the King is supposed to intend the great affairs of government, and cannot take notice of matters of lesser moment, as a common person may and ought to do. Hob. 224. And the true reasons, why the law adjudges the King’s grants void in cases of deceit, are first, To punish the party for his fraud ; secondly, To prevent damage and prejudice to the King’s interest, which would often happen if such grants were allowed. Hob. 223. Yet it is not every circumstance that may be called deceit, nor every wrong suggestion that will make the King’s grant void; and where the King is not deceived in the consideration, in his title, in the value of the land, or in the restraint he intended to make for his benefit, or generally where it is not to the prejudice of himself or his subjects, the grant will be good. Even false considerations will not always defeat the King’s grant; as where it is personal and executed, as for money paid Or service done; though the money was not actually paid or the service done, the grant will be good. 10 Rep. 67. 68. St. Saviours 13. patents 4. Mod. 415. Saund. 37. 3. Leon. 248. pi. 455. a. The reason is, though this be a deceit, yet the law does not esteem it so weighty or material as to destroy the grant. Hob. 223. If there was any thing in the argument of the King’s being injured in point of honor, this sort of deceit is as injurious to honor as any other; but as I never read or heard of that argument till last court, until' I have some better authority for it than Sir John Randolph, he must excuse me if I look upon it as a mere refined speculation of his own. In other cases it has been, drought to be for the honor of the King to make his grants valid, and not to destroy them : as in the point of construction, if two constructions can be made, and by one the grant will be void, and by the other good, for the honor of the King and benefit of the subject, such a construction shall be made as will support the grant. 10. Rep. 67. St. Saviours 6. Rep. 6. Sir John Molin. And certainly it is more for the honor of the King to pass over small faults, where it *32 is not to the prejudice of himself or subjects, than to be too rigorous in taking advantage of them. In the case of a common person, I am sure we should think so. 2. Just. 496. 497. 1 Mod. 96. read Hob. 222. and St. Saviours’ case, 2 Just. 2. Mod. L If the King by office found, has a manor in ward, and grants the said manor by a certain name, which said manor was lately seized in our hands, &c. and in truth the said manor was not seized, this shall not avoid the grant, though false, for it was not material, and was only added for the greater certainty of that which was certain enough before. 10. II. 4. 2. Sir John Le-strange cited in Legat’s case, 10. Rep. 113. &c. Queen Elizabeth granted to Thomas Markham the office of Keeper of parks or woods of B. which said office the Earl of Rutland lately held, whereas the said Earl never held the said office, and it was resolved by the Chancellor, Attorney, and Solicitor general, to whom it was referred, that the grant was good notwithstanding that false suggestion. So if the King demise a manor by special name, which manor was lately in the tenure of I. S. hut in truth he never had it, yet the grant is good; for in these cases the King is not deceived in his title, nor in the value of that he intended to grant, nor in the restraint which he, for his profit, intended to make. Sir Thomas Markham’s case, cited in Legat’s case, supra, quod lege. H. 7. anno 1719, granted to G. B. the mannor of B. in tail male, and anno 24. by letters patent reciting the former,-and that they were surrendered and cancelled, by virtue whereof, the King was seized in fee, granted the said manor to the said G. B. and T. Ms wife, and the heirs of G. (without any grant of the reversion) and the question was, if the reversion would pass by this last grant ? It was objected 1. That the estate tail was not recited as continuing, whereof the reversion might he granted, but as determined, and therefore the King granted it as a thing in possession, when he had only the reversion expectant. 2. The King thought by the surrender of the first letters patent the estate tail was determined, and that he was seized in fee, in which he was deceived. 3. The King was deceived in the estate he granted, for he intended to grant an estate in fee, in possession, and not a reversion expectant, but it was adjudged that the grant was good to pass the reversion, for here was no wrong done to any one, and less passed by the grant (viz. the reversion) than the King intended, and so no prejudice to him. 6. Rep. 55. Lord Chandos. Lege. 2. Mod. 1. Where was the King’s honor in this case, or those others I cited. Yet it is evident he was deceived, but the deceit was not material, no ways to his prejudice, and so not weighty enough to make void his grant. Many other instances of the like kind might. *33 be giren, but these I hope may suffice to shew, that though the King be deceived, if it be not in the consideration that is really in his title, in the value of the lands, or in the restraint he intended to make for his benefit, the grant may be good. It will remain then, to consider whether the King was so deceived in the present case, whether the deceit alleged, be so weighty or material, as that it should make the grant void. The method established here for granting the King’s lands, has been always the same. A survey is first to be made, and a plat returned before a patent issues. Not that there is any positive law for this, but that it has been the course and usage from the first settlement, and takes its rise, and continues its force, merely from the King’s authority and institution, who, no doubt, may establish another method for granting his lands if he pleases. Now that many patents must have been granted formerly, without the ceremony of marking and measuring of the land, (the want of which is die great fraud and deceit here complained of) must be evident to any one who considers the state of tilings upon the first settlement of the English here. The Indians were then in great numbers all over the country, and it could not be done with any safety or security; and indeed the disputes-we have concerning the bounds of the old grants, prove this point to a demonstration, since in many of them, there appear never to have been any marked lines or boundaries, and almost in all, a vast difference between the courses and distances of the patent, and the antient possession under them. But I never yet heard that any of these grants have been impeached, because the land was not marked, &c. Though we may expect they will, if it is your honors’ opinion that that defect is sufficient to avoid the King’s grant. That being equally necessary then as now, there was no positive law then, nor is now, making it necessary or essentia], and therefore, for the same reason, that if a grant made ten years ago is void for want of that circumstance, a grant made fifty or an hundred years ago, must be void for want of the like circumstance. The length of time will make no difference in the case of the King. It will be said, perhaps, there is an act of Assembly directing the surveyor to bound the land surveyed by him, by marking trees. And it is true there is such an act, and no doubt but what the surveyor ought to have done it, but then 1 must observe, that act is merely directing to the surveyor; the tide is, An act directing the duty of surveyors,’ 4. A. c. 22. and the whole scope of it plainly shews nothing more was intended. There is not a syllable of the King’s grants, or that they shall be void if the surveyor does not do his duty; nor would the King, 1 presume* be pleased to be so prescribed to. This act then, is nothing to the *34 purpose, only to shew the surveyor has not done his duty, which I allow. But it is no consequence 1 hope, that, therefore, the King’s grant is void ; I am sure the act says no such thing. But here Chew, the grantee, was privy to this neglect of duty in the surveyor, and -this is made a mighty aggravating circumstance. It may be necessary to obviate the force of that objection. It was said last court, that the grant was a mere forgery, that there was a combination between Chew and the surveyor, though to what end, I know not, and shall be glad it may be pointed out. It is found, indeed, that Chew knew the land was not marked or measured, when he took out his patent; but then it appears in the depositions, that the surveyor, when he began the survey, made an excuse for not finishing it, that it was Saturday night; but promised to do it when he came up to finish some other surveys. This, Chew might reasonably suppose he would do in nine months, which passed before he sued out his patent. But, admitting he was somewhat too hasty in getting a plat, and obtaining a patent before this was done,. 1 cannot see how this can he termed a fraud. It was rather a piece of ignorance, an error of the judgment, not any depraved or sinister intention; nor does there appear any advantage he could possibly propose by it to himself, nor any fraud upon the King ; for the full composition was paid. No more lands within the bounds than mentioned in the grant, and die full quit-rents honestly paid ever since. Neither could he intend or foresee any prejudice to another. He might well think the surveyor would finish his survey according to his promise; and if he did not do it, it is he alone is guilty of the fraud, and not Chew, and ought to answer for the injury done to the defendant; which he, or his representatives may undoubtedly be compelled to, notwithstanding die contrary was asserted last court. This mighty fraud, then, in Chew, of being privy to die surveyor’s neglect, when stated and considered, appears to be no more Úvan a piece of ignorance and folly, without any probability of a fraudulent sinister intention, either with respect to the King, or any one else. The surveyor is undoubtedly inexcusable. But then whether his neglect of duty ought to make void the King’s grant, must be humbly submitted. I shall now speak a word to the second point, which was to shew the general mischief and inconvenience that will be introduced, if it is determined that any neglect of duty in a surveyor, or his omitting to mark and measure the land surveyed, shall make the King’s grant void. I have had occasion already to speak of the old grants upon the first settlement of the English here, and it is evident, I hope, from wdiat has been said, that the lands then could not be marked or measured. It is further notorious, that in later *35 times, surveyors have been very remiss and negligent in their duly. Many plats upon which grants are founded, have been returned without stretching a chain, or marking a tree. Therefore, if it is determined that grants are void for these slips and frauds of the surveyor, it will introduce an universal confusion, and shake, for aught I know, half the titles in the country. No purchaser can be safe under a possession, though ever so long, if the crown thinks fit to repeal the grams; for no time will bar the King. In short, to determine that a grant is void because the surveyor did not mark or measure the land before he returned his plat, will be in effect to declare that half the patents in this country are void. Now the judges in their determinations, have regard to the generality of the subjects’ eases, and the inconvenience that may ensue. 1. Rep. 52. Vaughan lays it down as a rule, that where the law is known and clear, though unequitable and inconvenient, the judges must determine as the law is. But where the law is doubtful and not clear, the judges ought to interpret it to be as least inconvenient. To apply this. As it is far from being clear, that the defect of the surveyor in not marking and measuring the land, is such a deceit or false suggestion, as will make the King’s grant void, and as such a determination will be introductive of a general mischief and inconvenience, and tend to destroy many men’s titles to their inheritance, I hope it will not be your honors’ opinion. As to any hardship that may be pretended on the defendant’s part, and I remember a great deal was said of that last court, I hope Chew is not to answer for that, it being altogether the surveyor’s fault, of whom he must seek for his remedy. And as to losing his houses, which is part of the hardship complained of, that is owing to the defendant’s own follv and absurdity; since it appears Chew forewarned him from building upon the land in controversy, alleging it was within his bounds, and the defendant could not he ignorant that it was so, by offering to purchase of him. So his damage upon this account, is of his own seeking, and ought not at all to be considered. And-Tmust submit whether the hardship wall not be as great upon Chew, to lose his land merely for a neglect of duty in the surveyor, (for I can consider it in no other light,) when he has honestly paid the King his rights, which is in the nature of purchase money, has no more land than he ought to have, and has paid the full quit-rents ever since the time of his grant. But in truth, the hardship on either side should be thrown out of the question, and the general inconvenience is what ought to be considered. This, I hope, I have sufficiently shewn, and so humbly pray judgment for the plaintiff.
Randolph for the defendant.
The question is not whether the plaintiff’s grant be absolutely void ; but whether it be good against the defendant, who has obtained a fair grant, and observed all the rules prescribed by the law. Whereas the plaintiff’s grant is a mere forgery. Procuring a plat to be returned, and taking out a patent upon it, when he knew the land was not surveyed, was a very great fraud upon the King; a false suggestion of the party himself; and must make the grant void, at least so far as not to hurt an innocent person, as the defendant is. The rules for granting lands here, have been the same from the first settlement of the country. The first charter to the company empowered the Governor and Council to settle the privileges of adventurers, which was done by allowing fifty acres to each adventurer. The same course was allowed after the dissolution of the company, without any positive authority till the time of James 1L, when a new clause was added to the Governor’s commission, to grant fifty acres for importation; but no land was granted for money till 1703. Surveying was always necessary, and required before any grant was made, and vffiere an essential circumstance is wanting, the grant must be void. Vernon’s case, 1 Vern. 370. Vernon and Benson. 1 Mod. Cha. cases 47. Much more here, where the party himself was privy to this neglect of duty in the surveyor, and so joined with hint in the deceit upon tire King. The partaker in a fraud is equally guilty with the contriver. The law abhors all kinds of fraud. A fine, though the most solemn conveyance, if levied by fraud and covin, is void. 3. Rep. 77. Formers case, as to the inconvenience. This case must be distinguished from those where the surveyor alone is in fault, and the grantee no ways privy. In that case it might be hard that an innocent person should suffer for the neglect of duty in an officer. But here the party knew the officer had not done his duty ; it was a contrivance and combination between them, and a great piece of presumption and a notorious deceit upon the King, for the plaintiff to take out a patent upon such a piece of forgery as the plat was. Surely no favor or countenance, is due to such a practice, especially when an innocent man is to be oppressed and ruined by it. To prove the grant void, were cited Allen Wood’s case, 1 Rep. 40. b. Vores’ case cited in Legats. 10. Rep. 110. b. In April, 1735, judgment was given for the plaintiff by the opinion of seven judges against four. But upon file great importunity of the defendant’s counsel, the court was prevailed upon to hear another argument, which was made October, 1736, when Blair and Byrd having changed their opinions, judgment was given for the defendant by the opinion of these two and Randolph, Grymes, Garter and Digges; Lee, Tayloe, Curtis, Robinson and the Governor, contra-. Lightfoot, formerly for the defendant, now doubted. Carter did not hear the first argument.
Note. The court’s opinion turned upon the fraud (as it was termed) in tire plaintiff, viz. his knowing the land was not surveyed.
Reported by Edward Barradall, Esq. ¡,